## Keller *v.* Scranton, Appellant.

*Municipalities—Increase of indebtedness—Constitutional law.*

Where the debt of a municipality is more than two per cent of the assessed value of taxable property therein, and it appears that a part of the debt had been duly authorized by a vote of the electors, such part may be deducted from the gross amount, and the remainder, if under two per cent of the assessed value, may be increased to two per cent without special authorization by the electors.

Argued Feb. 25, 1902.  Appeal, No. 365, Jan. T., 1901, by defendants, from decree of C. P. Lackawanna Co., Jan. T., 1901, No. 1, on bill in equity in case of Luther Keller v. City of Scranton, the Lackawanna Railway Company and the Scranton Railway Company.  Before McCOLLUM, C. J., MITCHELL, DEAN, BROWN and MESTREZAT, JJ.  Reversed.

Bill in equity for an injunction.

From the record it appeared that on November 17, 1900, the councils of the city of Scranton passed an ordinance providing for the construction of a viaduct over the tracks of the Delaware, Lackawanna & Western Railway Company.

The court in an opinion by KELLY, J., found, inter alia, the following facts :

7. The erection of the viaduct will cause damage to the abutting property owners, and the amount which may be recoverable by them may aggregate the sum of $100,000 whenever the same may be liquidated according to law.

8. The damages which may result to the property owners by the construction of the viaduct are unliquidated damages, and their amounts have not as yet been ascertained.

9. At the time the ordinance which is set forth in the bill was adopted, to wit: November 17, 1900, the debt of the city of Scranton was $582,000.

10. Of the above debt of $582,000 the sum of $299,000 had been approved and authorized by a vote of the electors, and the balance of the debt, to wit: $283,000, had been incurred without a vote of the electors.

11. On the above date, to wit: November 17, 1900, the assessed value of the taxable property within the city of Scranton was $23,121,000, and two per cent thereof is $462,420.

The court found as a conclusion of law that the city of Scranton had no right to increase the present indebtedness without first obtaining the consent of the electors.

The court entered a decree restraining the defendants from proceeding under the provisions of the ordinance.

*Error assigned* was the decree of court.

*Joseph S. Clark* and *Everett Warren*, of *Willard, Warren & Knapp*, with him *George M. Watson*, for appellants.—The municipal authorities of the city of Scranton have the right to increase the indebtedness of the city to the extent of $179,420, without the consent of the electors. The record in this case shows that the proposed increase is $100,000 or less, and the ordinance is therefore valid: Wheeler v. Philadelphia, 77 Pa. 338 ; Pepper v. Philadelphia, 181 Pa. 566.

*I. H. Burns*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902 :
The general scheme of the constitution with regard to the

amount of municipal indebtedness is clear. Section 8 of article 9 divides such indebtedness into three classes considered with reference to amount, first, debt exceeding seven per cent of the assessed value of taxable property, which is absolutely prohibited, except as to cities whose debt exceeded seven per cent at the time of the adoption of the constitution; second, new debt or increase of indebtedness by the municipal authorities, which is permitted to the extent of two per cent of assessed value; and third, new debt or increase of indebtedness exceeding two per cent but less than seven per cent of assessed value, which is permitted with the assent of the electors at a public election.

The words of the section with which we are directly concerned are, " Nor shall any municipality or district incur any new debt or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property without the assent of the electors thereof." This though a limitation on the power of creating debt is also a recognition of its existence. The power to raise and spend money for public purposes is a necessary attribute of all governments, and in our system has always been exercised by the legislative branch of municipalities under such regulations as the legislature of the state has prescribed. The constitutional provision puts a limit on the power, and on the legislature's authority to confer it, but at the same time is a recognition of the power as exercised by the municipalities. Hitherto it had been without limit not only as to amount of expenditure but also as to time and mode of payment; it is still without limit as to amount of expenditure, if paid or means of payment provided at the time, but beyond two per cent of assessed value, it cannot be authorized as a debt for the future without the assent of the electors obtained at a public election. The result of the provision is that the municipal authorities, charged with the raising and spending of public money incident to the current expenses of the government, still have the same power they have always hitherto had as to the creation of public debt up to the two per cent limit, and the same power to the further limit of seven per cent if authorized by a vote of the electors. The immediate necessity for money in the administration of the municipality's affairs may vary from day to day and the mode of meeting it was not

intended to be taken out of the discretion of the ordinary municipal authorities, up to the prescribed limit, fixed as sufficient to provide for ordinary requirements. But when an extraordinary occasion or demand arises, requiring more than two per cent, then the assent of the voters must be obtained, and it will be sufficient up to the prescribed limit of seven per cent. The order in which these two powers may be exercised is not prescribed, and is not material. What the section is concerned with is the amount of the indebtedness of each class, not the order in which it is incurred.

It was found as a fact by the learned judge below, that at the time the ordinance in question was passed, the debt of the city was more than two per cent of the assessed value of taxable property therein, but that part of the debt had been duly authorized by a vote of the electors, and if this were deducted from the gross amount the remainder, created by the councils without special authorization by the electors, might be increased by the estimated debt to be incurred under the ordinance, without reaching the two per cent limit. Under such circumstances the debt was within the authority of councils and the ordinance valid.

The decree is reversed and bill directed to be dismissed with costs.