CHOSTKOV et al. v. CITY OF PITTSBURGH et al.

(Circuit Court, W. D. Pennsylvania, March 24, 1910.)

No. 12.

1. MUNICIPAL CORPORATIONS (§ 112*)—ORDINANCES—TITLE—SINGULAR SUBJECT.

Pittsburgh City Ordinance, No. 245, enacted September 25, 1909, authorizing submission to the electors of the question of increasing the city's indebtedness in an amount not exceeding $6,775,000 for certain specified purposes, did not violate Act Pa. May 23, 1874 (P. L. 231) § 3. as containing a plurality of subjects not clearly expressed in its title.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 112.*]

2. MUNICIPAL CORPORATIONS (§ 918*)—CITY DEBT LIMIT—ELECTION.

An ordinance submitting to the electors the question of increasing the city's indebtedness was not invalid under the Pennsylvania law for fail-

ure to authorize the electors to vote on the application of the moneys to be realized by the increase of the debt.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*]

**3.** Municipal Corporations (§ 918*)—City's Indebtedness—Extension—Election—Notice.

Where a notice of election to authorize an extension of a city's indebtedness correctly stated the percentage in figures as 953+ of 1 per cent., it was not fatally defective because the amount in words was erroneously stated as "nine hundred fifty-three ten thousandths of one per centum plus," it appearing, also, that there was no statute requiring that the percentage shall appear on the ballot.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*]

**4.** Municipal Corporations (§ 918*)—Indebtedness—Increase—Election.

Neither the Pennsylvania Constitution nor Act Pa. April 20, 1874 (P. L. 66) § 3, as amended by Act June 9, 1891 (P. L. 252) § 1, as amended by Act May 1, 1909 (P. L. 317), providing for an election to authorize an extension of a city's indebtedness, requires that the elector shall pass on the purpose of the contemplated loan.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*]

**5.** Municipal Corporations (§ 918*)—Municipal Indebtedness—Increase—Election Ballot.

Whether municipal indebtedness should be increased was properly printed on the general ballot to be voted at the election at which the question was submitted in the form prescribed by Act Pa. April 29, 1903 (P. L. 338), notwithstanding Act May 1, 1909 (P. L. 317), relating to the same subject.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*

Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.]

**6.** Municipal Corporations (§ 918*)—Statutes—Increase of Indebtedness—Ballot.

Act Pa. June 12, 1893 (P. L. 454) § 3, providing that, where it is necessary to obtain the assent of electors to a city bond issue, the question of increasing the city's debt shall be so submitted that the electors may vote for or against a bond issue for the improvement of any particular street or alley, separately and apart from the question of increasing the indebtedness for the improvement of any other street or alley, is a specific act providing a system for street improvements and for increasing the city's indebtedness by issuing bonds and collecting the cost of the improvement from the property benefited by a special assessment and has no application to the increase of municipal indebtedness, generally as provided by Act Pa. April 20, 1874 (P. L. 65), and its amendments and supplements.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*]

**7.** Municipal Corporations (§ 323*)—Improvements—Estimate of Cost—Taxpayers' Suit.

Where a city had power to construct a certain improvement in the exercise of discretion, a taxpayer could not enjoin the proceedings because the cost would exceed the city's estimate, nor because the proposed improvement was unnecessary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 842; Dec. Dig. § 323.*]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MUNICIPAL CORPORATIONS (§ 918*)—DEBT LIMIT—INCREASE.
	Where a city's debt limit is more than 2 per cent. of the assessed value of its taxable property, and part of the debt has been authorized by vote of the electors, such part may be deducted from the gross amount. and the remainder, if under 2 per cent. may be increased to that amount without special authorization by the electors.
	[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 918.*]

9. MUNICIPAL CORPORATIONS (§ 994*)—IMPROVEMENTS—TAXPAYERS' SUIT.
	A taxpayer could not maintain a suit to enjoin the city from increasing its indebtedness to pay for certain improvements on the theory that the board of assessors was illegally constituted and not authorized to assess complainant's land for taxes for the proposed indebtedness, quo warranto being the only remedy in Pennsylvania to try title to office.
	[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 994.*]

In Equity. Taxpayers' bill by Sarah Chostkov and others against the City of Pittsburgh and others. On demurrer to bill. Sustained.

Frank H. Kerr and A. E. Anderson, for plaintiff.

Chas. A. O'Brien, City Sol., for defendant.

ORR, District Judge. The plaintiff, who is a citizen of the state of Ohio, has filed a bill as a taxpayer of the city of Pittsburgh, to restrain the city and the. officers thereof from issuing bonds to secure an increase of the city's debt. Plaintiff has sought the jurisdiction of this court not because of the involution of any federal question, but solely because of the diversity of the citizenship of the plaintiff and the defendants. Relief is sought not because of any alleged want of power in the city to increase its debt and to issue bonds, but because, as is alleged, the defendants have failed to comply with certain constitutional and statutory provisions by which such power became vested in and should be exercised by the municipality.

Briefly, the plaintiff contends (a) that the city ordinance providing for the submission to a vote of the people of the question of increasing the indebtedness is invalid; (b) that the notice of such election contained a material error; (c) that the election was not conducted in the manner prescribed by law; (d) that the cost of removing the hump will greatly exceed the city's estimate and the portion of the proposed indebtedness intended to be applied thereto, and that such excess will cause a debt in excess of the constitutional limit; (e) that the board of assessors is illegally constituted, and cannot assess the taxpayers' land for taxes for the proposed indebtedness. In the consideration of these several contentions hereafter the material facts on which plaintiff relies will appear. The demurrer filed by the defendants denies that any act or contemplated act on the part of the defendants requires the interference of the court; that no right of the plaintiff as a taxpayer has been violated; and further insist that the bill is multifarious.

At the outstart the provisions of the Constitution of Pennsylvania relating to municipal indebtedness should be noted. Section 8 of article 9 provides that the debt of a municipality shall never exceed 7 per centum upon the assessed value of the taxable property therein,

---

and that it shall not exceed 2 per centum, "without the assent of the electors thereof at a public election in such manner as shall be provided by law." Section 10 of article 9 provides that such municipality, at or before the time of increasing its debt, shall "provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." Section 4 of article 8 of the same Constitution provides that all elections shall be by ballot or by such other method as may be prescribed by law.

The city of Pittsburgh is a city of the second class in Pennsylvania, and as such is specifically subject to all the provisions of an act of the General Assembly of that state, approved March 7, 1901 (P. L. 20), and commonly known in Pittsburgh as the "City Charter." By this act the city is empowered to enact ordinances for the purpose of borrowing money on the credit of the city, and of pledging the credit and revenue thereof for the payment of the same to the limits, and in the manner expressed in the constitutional provisions aforesaid. In pursuance of the powers thus possessed, the city on September 25, 1909, duly enacted an ordinance, of which the following is the title:

"No. 245. An ordinance authorizing the submission to a vote of the electors of the city of Pittsburgh the question of increasing the indebtedness of said city in an amount not exceeding six million, seven hundred and seventy-five thousand ($6,775,000.00) dollars, for the following purposes, to wit, $3,000,000.-00 thereof for additions and improvements to the plant and system used in the supply and distribution of water; $1,500,000.00 thereof for the regrading, repaving and otherwise improving the streets of said city; $700,000.00 thereof for the purchase and improvement of parks and public playgrounds; $300,000.00 thereof for the acquirement of public toll bridges crossing the Allegheny river; $850,000.00 thereof for the construction and reconstruction of public bridges and sewers; $75,000.00 thereof for the construction of a bridge on the line of Southern avenue; $250,000.00 thereof for the purchase of land and the construction of a Tuberculosis Hospital; and $100,000.00 thereof for garbage and rubbish disposal or incineration."

(a) Plaintiff's first contention that this ordinance is invalid is based on two grounds: First, that it violates section 3 of the act of Assembly of Pennsylvania approved May 23, 1874 (P. L. 231), which provides that no ordinance shall be passed by city councils "containing more than one subject which shall be clearly expressed in its title. Second, that it deprives the electors of a right to vote upon the several intended applications of portions of the moneys derived from such increase. There is nothing in the ordinance which is not expressed in its title. There is nothing in the title but the one subject; that is, the increase of debt to the amount of $6,775,000 to meet the expense of certain contemplated improvements therein mentioned. The ordinance does not pretend to authorize those improvements, but only to provide for a definite increase of the city's debt. There is but one subject, and that is clearly expressed in the title. Nor is the ordinance void because it does not provide that the electors shall vote upon the application of the moneys to be realized by the increase of the city's debt. These views are expressly held by the courts of last resort in Pennsylvania. Morrellville Borough's Annexation, 7 Pa. Super. Ct. 532; Barr v. Philadelphia, 191 Pa. 438, 43 Atl. 335; Major v. Aldan Borough, 209 Pa. 247, 58 Atl. 490. That such views not being plainly

wrong should be respected by this court is clear from abundance of authority. One of the late cases on the subject is Welch v. Swasey,. 214 U. S. 91–106, 29 Sup. Ct. 567, 53 L. Ed. 923.

(b) Plaintiff's second contention is that the notice of election was insufficient in that there was a material error in stating the percentage of the proposed increase. The Pennsylvania Act of April 20, 1874 (P. L. 66) § 3, as amended by Act June 9, 1891 (P. L. 252) § 1, as amended by Act May 1, 1909 (P. L. 317), provides as follows:

"The indebtedness of any county, city * * * may be authorized to be increased to an amount exceeding two per centum, and not exceeding seven per centum, upon the last preceding assessed valuation of the taxable property therein, with the assent of the electors thereof, duly obtained at a public election to be held in said district or municipality. Whenever the corporate authorities of any county, city * * * by their ordinance or vote shall have signified a desire to make such increase of indebtedness, they shall give notice * * * of an election to be held at the place or places of holding the municipal elections * * * on a day to be by them fixed, for the purpose of obtaining the assent of the electors thereof to such increase of indebtedness. Said notice shall contain a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and for the purposes for which the indebtedness is to be increased. Such election shall be held at the place, time and under the same regulations as provided by law for the holding of municipal elections, and it shall be the duty of the inspectors of such elections to receive tickets, and to deposit said tickets in a box provided for that purpose, as is provided by law in regard to other tickets received at said election; and the tickets so received shall be counted and a return thereof made to the clerk of the court of quarter sessions of the proper county. * * * In receiving and counting, and in making returns of the votes cast, the inspectors, judges, and clerks of said election shall be governed by the laws of this commonwealth regulating municipal elections."

The notice given by the city of the election apparently contained all the information required by said legislation to be given. The "percentage" was stated in words as "nine hundred fifty-three ten thousandths of one per centum plus," instead of "nine hundred fifty-three one thousandths of one per centum plus," which it should have been. It was stated in figures correctly. That variation would be apparent to the voter who carefully studied the notice. Such voter had before him a correct statement of the amount of the proposed increase and the amount of the last assessed valuation, from which only the correct percentage can be ascertained. The careless reader of the notice would observe the figures. It is true that in commercial transactions as a general rule the law is that words control the figures, yet percentage is more often expressed in figures than in words. Another reason why such variation is immaterial is that the material thing which is submitted to the voters is the mere question of the amount of the increase in dollars and cents. In no act of Pennsylvania was it ever provided that the percentage shall appear upon the ballot which is a direct and final notice to the elector.

(c) Plaintiff's third contention is that the election was not conducted in the manner prescribed by law in that no tickets were provided at the polling places whereon the electors could express their assent ·to or dissent from any of the several purposes or the proposed increase as a whole, but that the question as a whole was unlawfully printed on

the general ballot used at the general election which took place at the time of the vote upon the increase of the debt. What has been said above with respect to plaintiff's second objection to the ordinance providing for the election is applicable to the first part of this objection to the election. Neither the constitution nor any statute of Pennsylvania provides that the elector shall pass upon the purpose of the loan. The statutory provision that the purpose and amount of the increase shall be written or printed upon the inside of the ticket is simply for the information of the voter that he may vote intelligently on the question submitted. Major v. Aldan Borough, supra.

But little consideration is needed to arrive at the conclusion that the question was properly printed upon the general ballot. If it were not for the act of May 1, 1909 (P. L. 317), there could be no question about it, because on April 12, 1909, the Supreme Court of Pennsylvania in McLaughlin v. Summithill Borough, 224 Pa. 425, 73 Atl. 975, expressly decided that the ballots to be used at an election to ascertain whether a municipal indebtedness should be increased must be official ballots and must be in the form prescribed by the act of April 29, 1903 (P. L. 338), called the "General Ballot Act." The portions of the act last mentioned necessary for present consideration are the following:

"Whenever the approval of a constitutional amendment, or other question, is submitted to a vote of the people, such question shall be printed upon the ballot in brief form, and followed by the words 'Yes' and 'No,' and if such question be submitted at an election of public officers, it shall be printed after the list of candidates.

"The ballots shall be so printed to give to each voter a clear opportunity to designate his choice of candidates by a cross-mark (X), in a square of sufficient size, at the right of the name of each candidate, and inside the line inclosing the column, and, in like manner, answers to questions submitted, by similar marks, in squares at the right of the words 'Yes' and 'No.'"

The act of May 1, 1909, and the General Ballot Act of 1903 are not in any way inconsistent. There is no possible suggestion of an implied repeal of the former by the latter act. It follows, therefore, that that act does not change the law as laid down by the Supreme Court in the case last cited. The city complied with the provisions of the general ballot act, and the voters had an opportunity to designate their answers, yes or no, to the question submitted to them. No objections which have been presented by the plaintiff have led the court to any other conclusion than that the election was according to law.

At this point it is well to consider plaintiff's reference to the provisions of section 3 of the Act of Assembly of Pennsylvania approved June 12, 1893 (P. L. 454), of which act the following only has been printed in the bill and relied upon:

"In all cases where it may be necessary to obtain the assent of the electors to an issue of bonds, the question of thus increasing the city debt shall be so submitted to the electors that they shall have the opportunity of voting for or against the issue of bonds for the improvement of any particular street or alley, separately and apart from the question of increasing the city debt for the improvement of any other street or alley."

This reference is disingenuous to say the least. That portion of the act taken by itself and away from its context suggests one thing, but with its context it suggests anything but support for the plaintiff's con-

tention in this case. The act has nothing to do with the increase of municipal debt under the provisions of the act of April 20, 1874 (P. L. 65), and its amendments and supplements. The act of 1874 is a general act relating to the indebtedness of municipalities. This act of 1893 is a specific act providing a system whereby cities may pave streets and increase the indebtedness of the city by issuing bonds and collecting the costs of the improvement from property benefited by such improvement. The entire act is to be considered as an additional method provided for the paving of streets where the city intends to collect the costs out of abutting property specially benefited. It does not and cannot refer to any proceeding where a city intends to make public improvements at its own expense.

(d) The plaintiff's fourth objection is that the cost of removing the hump will greatly exceed the city's estimate, and that the proposed removal is unnecessary. It is a complaint against alleged reckless waste of the city's moneys. If courts of equity were always responsive to the taxpayer's complaint that municipal authorities were unwisely contemplating municipal improvements, suits in equity would be most frequent. The courts afford relief in such cases only when the municipal authorities are exceeding the powers vested in them. It is a well-settled equitable doctrine that courts of equity will not interfere with the exercise of discretionary powers vested in municipal bodies. Abbott on Municipal Corporations, vol. 3, p. 2511. No one doubts that the city of Pittsburgh has the power to fix and change the grades of streets, to widen them and to pave and repave them, and this power may be exercised whether one street only is to be affected or a number of streets and alleys at the same time as in the case of the proposed removal of the hump.

Further it does not appear that the cost of these improvements will increase the debt of the city beyond the constitutional limit. That may eventually be the fact, but to interfere now will be to control the exercise of the discretion vested by law in the municipal authorities, which this court cannot do. If the contemplated improvements cost more than the portion of the proposed debt applicable to that purpose the city has other resources which may be applied thereto. As long as the indebtedness will not exceed 7 per centum, the city has a right to incur indebtedness to the 2 per centum limit without the vote of the electors. This is stated more at length and perhaps more clearly in Keller v. Scranton, 202 Pa. 586, 52 Atl. 26, syllabus:

"Where the debt of a municipality is more than 2 per cent. of the assessed value of taxable property therein, and it appears that a part of the debt had been duly authorized by a vote of the electors, such part may be deducted from the gross amount, and the remainder, if under 2 per cent. of the assessed value, may be increased to 2 per cent. without special authorization by the electors."

The city still has a margin to its credit with respect to the 2 per centum limit. It has its ordinary taxing power. In addition, there is a possibility that local assessments upon such properties as may be benefited by changes of grade, or by widening, may reduce the cost to which the city may be put.

(e) Plaintiff's fifth contention, that the board of assessors is illegally constituted and cannot assess the taxpayer's land for taxes for the proposed indebtedness, is not tenable. It is well said that the only proper method of trying title to office in Pennsylvania is by quo warranto, and if plaintiff were dissatisfied with the assessment of her real estate, she should have sought the relief which the statutes of Pennsylvania provide for the taxpayers.

This opinion need not be extended further to show why there is no federal question involved, because that was admitted by plaintiff's counsel at the argument; nor to show why the bill is multifarious, for that is plain. What has already been said shows sufficiently that no legal rights of the plaintiff have been or are likely to be violated.

The demurrer must be sustained.