## Hoover v. Canton Township School District et al.

*Election law—Increase of indebtedness—Notice—Immaterial mistake in notice.*

Where the notice of a municipal election to increase debt of a school district correctly sets forth the assessed valuation of the district, the amount of the existing debt and the amount of the proposed increase of indebtedness, an inaccuracy in stating the percentage of the proposed increase is not such a material error as will justify the court in setting the election aside, inasmuch as any elector could have ascertained for himself what the correct percentage actually was.

Bill in equity to enjoin issuance of bonds by directors of school district. C. P. Washington Co., No. 3125.

*Wiley, Marriner & Wiley,* for plaintiff; *James P. Eagleson,* for defendants.

BROWNSON, P. J., July 12, 1926.—This taxpayers' bill was filed against the School District of Canton Township and the members of its board of directors to enjoin a proposed issue of bonds of said district. On presentation of the bill, with injunction affidavits, an order was made fixing July 9, 1926, at 10 o'clock A. M., as the time for hearing a motion for a preliminary injunction. At the time so fixed, the parties, by their respective counsel, appeared in open court, and the defendants, having accepted service of the bill, presented for filing their answer thereto, whereupon, it appearing that there were no facts in dispute, it was mutually agreed that the hearing be converted into a final hearing upon bill and answer. Accordingly, the question of law raised by the bill and answer was argued, and the case submitted for final hearing, and the matter was taken under advisement by the court.

### Facts.

From the pleadings the following facts appear:

1. The School District of Canton Township is a municipality, being a school district of the fourth class, existing under the Common School Law of Pennsylvania. The other defendants are the duly elected and qualified directors thereof, and the complainant is a citizen and taxpayer of said district.

2. On Aug. 6, 1925, the board of directors of said district adopted a resolution expressing a desire to increase the indebtedness of the district by an amount not to exceed $50,000, for the purpose of repairing, enlarging and rebuilding certain school buildings and equipping and furnishing the same, to the end that the public schools of said district might be maintained in compliance with law, bonds of the district to be issued for the amount of such increase; and providing that the question of making such increase of indebtedness should be submitted to the electors of the district, for the purpose of obtaining their assent thereto, at an election to be held on Nov. 3, 1925, and that notice thereof be given by the secretary.

3. In pursuance of and in accordance with this resolution, the secretary of the board of directors gave notice to the electors of the district that the question of making such an increase of debt would be submitted to them at the election to be held on Nov. 3, 1925. At said election, votes were cast for and against the proposed increase, a majority of the electors voting in favor thereof, and the directors of the district propose to issue and sell bonds for the purposes set forth in the resolution aforesaid.

4. The notice of said election, as given, in the manner prescribed by the resolution aforesaid, sets forth, for the information of the electors, the following matters, *inter alia:*

"The amount of the last assessed valuation of the taxable property in said district is $3,385,320.00

"The amount of the existing indebtedness of said district is $51,000.00.

"The percentage of the proposed increase of indebtedness is approximately one and two thousandths (1.002%) per centum of the last assessed valuation given above."

5. The statement, so made, that the percentage of the proposed increase is 1.002 was not correct and accurate, since, as a calculation shows, $50,000 is in fact a small fraction under 1.5 per cent. of the valuation, $3,385,320.

6. The bill charges that said notice, by reason of its stating the percentage to be approximately 1.002 instead of stating it as approximately 1.5, was not in compliance with the requirements of the act of assembly regulating the increase of municipal indebtedness, and prays that the election held be for this reason declared to be void. It is undisputed that in all other respects all the requirements of law have been complied with.

7. The said notice correctly set forth the amount of the last assessed valuation and the amount of the proposed increase, thus giving to the electors data from which, by calculation, they could verify the correctness of the percentage statement. The erroneous statement thereof was unintentionally made, being the result of a clerical error of the person who prepared the resolution and notice. In all the steps they have taken looking toward the making of this increase of indebtedness, including the notice given to the electors, the directors of the district have acted with honesty of purpose and entire good faith.

8. No person having raised any objection to this notice previous to the election, or at any time until shortly before this bill was filed, the directors, in reliance upon the vote cast at the election, entered into a contract for the erection of a school building in the place of one which had been condemned by the Department of Public Instruction, the cost to be paid with the proceeds of the proposed bonds when issued; and the erection thereof is now in progress, the effort being made to have it completed in time for the opening of the ensuing fall term of school. If it should be determined that said election was void and that the directors were not authorized to enter into the building contract and incur thereby the debt intended to be paid from the proposed bond issue, inconvenience and loss may result to the school district.

## Discussion.

The procedure for effecting an increase of the indebtedness of municipalities is regulated by the Act of April 20, 1874, P. L. 65. Section 3 of that act, in the final form given to it by the amendment of April 7, 1925, P. L. 171, requires municipalities (including school districts), when seeking the assent of the electors to such an increase, to embody in the notice of the election to be held for that purpose "a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and for [of] the purposes for which the indebtedness is to be increased." These directions clearly "are mandatory in the sense that they impose the duty of obedience on those who come within their purview:" Black on Interpretation of Laws, 571, as quoted in Knight *v.* Coudersport Borough, 246 Pa. 284, 289. But whether all of them are mandatory in the sense in which the word is frequently employed, viz., that a failure of strict compliance will vitiate what is done, or, to state the matter more concretely, whether such an inaccuracy in the statement of the percentage as occurred here will render void the election subsequently held, is the question, and the only question, now to be determined.

In Knight *v.* Coudersport Borough, 246 Pa. 284, and Com. *v.* Kelly, 255 Pa. 475, the doctrine was laid down that when a law regulating elections does not declare that a specified irregularity shall be fatal to the legality

of an election, it does not follow that every slight departure from the directions of the statute will taint the whole proceedings with a fatal blemish, and that, "in the absence of such declaration, the judiciary endeavor to discern whether the deviation from the prescribed forms of law had or had not so vital an influence on the proceedings as probably prevented a full and free expression of the popular will," and if it had, will hold the entire election vitiated by the irregularity, while, if it had not, will consider it immaterial. There are a number of reported decisions of lower courts, collected in 5 P. & L. Dig. Dec., Col. 7876, and Vol. 1 of the supplements thereto, Col. 1877, in which this doctrine has been applied to cases wherein there was some lack, irregularity or defect in the performance of a statutory duty to give notice of certain matters previous to an election, the criterion adopted by those courts appearing to be, whether the defect or irregularity apparently did, or was likely to, mislead voters and thus interfere with a free and intelligent expression of their will. The statute which applies here does not contain a declaration that any and every error of fact which may be contained in the notice of a bond election, as to the matters directed to be set forth therein, shall vitiate the election, and, accordingly, it is in order to inquire how our courts have applied the principle stated in the two Supreme Court cases above cited.

In McGuire v. Philadelphia, 245 Pa. 307, the notice of the election stated the existing debt of the city as being an amount which was $6,382,842.88 less than that debt really was. There were no data given from which the electors could check the correctness of the statement as to the existing debt. Nothing contained in the notice would enable them to know that this statement was erroneous. Hence, an elector who was willing that the city should be bonded up to, but not beyond, the aggregate sum to which, according to the representations of the notice, the then proposed issue would bring its debt, would be misled into voting in favor of a proposal which he would have voted against had the true amount of the existing debt appeared in the notice. He would actually be voting to make the total debt of the city more than $6,000,000 greater than he thought he was doing. (See page 312.) Thus the erroneous statement made in that case would have the effect of interfering with and preventing an intelligent expression by the electorate of their will. It was a most material error. The court enjoined the holding of the election, ruling that it is "mandatory upon the public authorities" (in the second of the senses above referred to) to give the electorate correct information as to the existing debt.

The present case is quite different in its facts from McGuire v. Philadelphia. Here, by an honestly-made clerical error, the percentage of the proposed increase was stated as "approximately" 1.002, whereas it actually was a slight fraction below 1.5 per cent. If this variation should be regarded as too great to be covered by the word "approximately," it would still not follow that any voter would be deceived or misled, because the notice gave to the electors correct information on the subject in another way; that is to say, it furnished them figures from which they could, and if they gave the matter any attention would, see that the percentage 1.002 was an obvious error and could ascertain the correct percentage. It set forth the amount of the assessed valuation, $3,385,320; the amount of the existing debt, $51,000, and the amount of the proposed increase, $50,000, all of these figures being correctly stated. From them, voters would know that the debt they were asked to sanction, when added to the existing debt, would cause the district to be bonded for $101,000, to provide for the payment whereof there was taxable

property valued at $3,385,320. Upon these data the electors could exercise an intelligent judgment as to the advisability of approving the proposal to borrow $50,000, and the question of the exact fractional percentage rate (between 1 per cent. and 1.5 per cent.), at which the ratio of $50,000 to $3,385,320 will figure out, would be to them of very minor importance. The obvious purpose of requiring that, in addition to the valuation and the amount of the proposed borrowing, the percentage shall be stated is merely that any elector who wishes to know this may be saved the trouble of calculating it. To any one sufficiently interested therein to pay any attention to the percentage figures, it would be obvious that the rate 1.002 could not be an accurate statement, and that the true percentage would be something near 1.5, and, if sufficiently interested to do so, any one could compute for himself, or have computed for him, the exact percentage out to the last decimal, or he might, before the election, demand that the school authorities do this. No one made any objection before the election was held. It is not claimed that any elector in fact was in any way misled by the inaccurate statement of this percentage, and I cannot see that the inaccuracy was so material as to have a tendency to affect the result of the election. The situation here presented is strikingly different from that of McGuire v. Philadelphia.

We have not been referred to any decision of the Supreme Court dealing with a similar state of facts, but there are decisions of other courts which are in point.

In Chostkov v. Pittsburgh, 57 Pitts. L. J. 471, 177 Fed. Repr. 936, the notice stated the percentage, in words, as nine hundred and fifty-three ten thousandths of 1 per cent., plus, and in figures, as .953 plus of 1 per cent. The latter was correct. The notice gave correctly the amounts of the valuation and the proposed increase, from which voters could ascertain what the correct percentage was. The Circuit Court of the United States for the Western District of Pennsylvania, Orr and Young, JJ., held this discrepancy or error immaterial and the election valid.

In the case of Increase of Indebtedness of the Borough of Saukertown, decided May 21, 1926, in Cambria County, and not reported, it appeared that by a clerical error the notice stated the percentage as 2.3988, whereas the correct figure was 3.103, but the true percentage was easily ascertainable by calculation from the other data given. The court, composed of Evans, P. J.; McCann, J., and Reed, P. J., specially sitting, held, in an opinion written by Evans, P. J., that this clerical error was not so material as to make the election and proceedings entirely invalid, and adjudged the same to be valid.

In Jacobs v. East Bangor, 8 Northamp. Co. Repr. 19, the notice gave the percentage as 3.545, whereas the correct percentage was 5.296. Of this error the court, Schuyler, P. J., said: "As the percentages were purely a matter of calculation from data furnished, we do not consider the discrepancy as to them of serious moment."

The departure from correctness in the present case is considerably slighter than in either of the three cases last above cited. Looking at the matter from the standpoint of reason and common sense, it would seem to me that this slight clerical error should not, under all the circumstances of this case, be given the effect of invalidating all that has been done, it not being a sufficiently material departure from accuracy to have any effect upon the result of the election.

It is true, as was said in Graham v. Lebanon, 240 Pa. 337, 340, that the validity of municipal bonds must rest upon and be supported by preliminary proceedings which are in compliance with the requirements of the Act of

1874, upon which ground it was held in that case that an election not adver-tised for the prescribed time was invalid. This ruling was in accordance with the universally recognized doctrine that, when the law provides for a con-structive notice by publication during a specified period, nothing less than publication for the whole of that period will amount to such notice, because this is regarded and treated by the law as requisite to cause the matter to be brought to the attention of the persons to be affected. Anything less is a material departure from the law. But I find nothing in that case requiring the conclusion that, on account of the occurrence of such a clerical error in the published notice as the one under consideration, the means of correcting which were furnished by the notice itself, an election at which the voters by a large majority have given consent to a bond issue should be stricken down when no one made any objection before it was held, and there is no reason to believe that the error did have, or could have had, any influence or effect upon the vote cast.

Accordingly, the court adopts the following

### Conclusions of law.

1. The inaccurate statement of the percentage, which occurred in the pub-lished notice of the election, as set forth in the findings of fact, did not have the effect of rendering invalid the election held as therein stated, and does not affect the legality of the bonds proposed to be issued, in pursuance of said election, by the defendant school district.

2. The plaintiff's bill should be dismissed at his cost.

And now, July 12, 1926, it is ordered that the foregoing adjudication be filed of record, and that notice thereof be given by the prothonotary to the counsel of the respective parties. And it is further ordered that, if no excep-tions be filed sec. reg., a decree shall be entered dismissing the plaintiff's bill, at his cost.

From Harry D. Hamilton, Washington, Pa.