## Walters v. Tamaqua Borough et al.

*Municipalities — Bonds — Debt — Increase without consent of electors—Order of increase—Constitutional law—Current loans—Bonds provided for by revenue.*

1. A bond issue authorized by the borough council without a vote of the electors is valid if the amount does not exceed 2 per cent. of the assessed valuation of property within the municipality, notwithstanding the fact that there are already outstanding bonds in excess of that amount, if such latter bonds were all authorized by the electors.

2. Under section 8 of article ix of the Constitution, debts not exceeding 2 per cent. of the assessed value of taxable property may be created by the municipal authorities without consent of the electors, and debts over 2 per cent. and not exceeding 7 per cent. may be created with the consent of the electors, and the order in which this indebtedness is incurred is immaterial.

3. In estimating the total debt, it is not necessary to include a temporary loan made in anticipation of current revenues or bonds issued to acquire water-works, if the net revenues from the water-works have been sufficient for five years to pay interest and sinking fund or if such bonds are secured by liens upon the water-works and impose no liability upon the municipality.

Bill in equity to restrain the issue of municipal bonds. C. P. Schuylkill Co., July T., 1925, No. 1.

*R. J. Graeff,* for plaintiff; *J. O. Ulrich,* for defendants.

BERGER, J., April 11, 1927.—This is an injunction bill filed May 4, 1925, against the Borough of Tamaqua and the members of its borough council to restrain the issue of bonds of the borough to the amount of $100,000, or to increase the indebtedness of the borough to that extent, pursuant to a resolution of the town council passed Feb. 9, 1925, and approved by the chief burgess Feb. 13, 1925. The case came on for hearing before the chancellor March 11, 1926, on bill and answer. After the introduction of some testimony on that

date by the plaintiff in support of his bill, he asked leave to file a replication, and the case was continued to permit that to be done. No replication was filed until Oct. 25, 1926, and the case was brought to a close without the offer of any additional testimony. The facts which I am about to find and state are based upon the evidence and the admissions arising out of the bill, answer and replication.

### Facts.

1. The Borough of Tamaqua was incorporated by the Act of the General Assembly of the Commonwealth of Pennsylvania, approved April 8, 1833. By a decree of the Court of Quarter Sessions of the County of Schuylkill dated March 2, 1852, it is subject to the restrictions and possesses the powers and privileges conferred by the act of assembly, entitled "An act regulating boroughs," approved April 3, 1851, and its supplements.

2. On Feb. 9, 1925, the members of the town council of the Borough of Tamaqua were John F. Wagner, John T. Davis, John F. West, Robert J. Kantner, Edward Murphy, Solon Bobst, Thomas Stahler, Henry Hartman, Harry Weaver, Howard Greenawalt, A. L. Hadesty, Jr., and Thomas Cartmell. Thomas Stahler died since this bill was filed, and J. Nelson Gothie, who succeeded him by appointment, has been made a party defendant by amendment of the bill.

3. Feb. 9, 1925, the town council of the Borough of Tamaqua passed a resolution to increase the bonded indebtedness of the borough in the sum of $100,-000, the bonds to be dated April 1, 1925, payable thirty years after date, and bearing interest at the rate of 4½ per cent. per annum. This resolution also directed the preparation and filing of a statement showing the financial condition of the borough, in accordance with the requirements of the law relating to the increase of indebtedness by municipalities.

4. Feb. 13, 1925, John F. Wagner and Henry Keilman, as president and secretary of the town council, respectively; Samuel R. Beard, the borough treasurer, and Eli F. Ehrich, the chief burgess of the borough, executed and filed in the office of the Clerk of the Court of Quarter Sessions of Schuylkill County a statement of the financial condition of the Borough of Tamaqua, in which is incorporated a copy of the resolution of the town council authorizing the proposed increase in the bonded indebtedness of the borough. This statement is made a part of the plaintiff's bill of complaint.

5. By advertisement in the Evening Courier, a newspaper of general circulation in the Borough of Tamaqua, bids to be opened in council chamber March 23, 1925, at 8 P. M., were invited for the sale of the bonds. The borough reserved the right to reject any or all bids, and the bonds, if sold, were to be ready for delivery to the purchaser April 1, 1925.

6. The bid of E. H. Rollins & Co. for the entire issue of bonds was $101,-918.40, but acceptance of their bid was postponed because there was then pending an injunction bill, filed March 17, 1925, to No. 3, May Term, 1925, by the plaintiff in this suit, to restrain the present defendants from making sale of the bonds. The bill was dismissed April 20, 1925, on preliminary objections. See Walters *v.* Tamaqua Borough, 6 D. & C. 323. The bid of E. H. Rollins & Co. for the bonds was accepted on April 20, 1925, on action of the town council taken after plaintiff's bill had been dismissed, and actual delivery of the bonds to them was made some time after May 4, 1925, upon payment of the purchase price to the treasurer of the Borough of Tamaqua.

7. The assessed value of the taxable property in the Borough of Tamaqua, according to the triennial assessment made in the year 1922, as fixed by the county commissioners sitting as a board of revision, was $11,605,203. As a

Walters v. Tamaqua Borough et al.

result of the hearing of appeals to the Court of Common Pleas from valuations fixed by the board of revision, the valuation in the Borough of Tamaqua was reduced, by agreement of the parties, to $9,794,372, but this reduction was without prejudice to the right of the appellants to prosecute their appeals further, and they were so proceeded in that the assessed value of the taxable property in the Borough of Tamaqua was ultimately fixed, by an agreement between the board of revision and the parties to the appeals, at the sum of $5,422,682. From the evidence, it is impossible to ascertain the exact dates when these two reductions in the assessed taxable value of the property in the Borough of Tamaqua were made by the board of revision, but the taxes for the year 1924 were levied on the valuation of $9,794,372, and for the year 1925, on the valuation of $5,422,682. The statement of the financial condition of the borough, filed Feb. 13, 1925, as is set forth in paragraph 4 of these findings, avers that the last preceding assessed valuation of the taxable property in the Borough of Tamaqua was $9,897,772. The valuation of $5,422,682 was not fixed by the board of revision until April, 1925.

8. The bonded debt of the Borough of Tamaqua on Feb. 9, 1925, and on Feb. 13, 1925, was alleged to be as follows:

| | |
|---|---:|
| Sewer loan of 1904 | $700 |
| Varioloid loan of 1906 | 21,300 |
| Sewer and refunding loan of 1912 | 45,000 |
| Refunding and improvement loan of 1914 | 25,000 |
| Refunding loan of 1920 | 60,000 |
| Water loan of 1919 | 100,000 |
| Water refunding loan of 1922 | 35,000 |

9. The water loan of 1919, amounting to $100,000, and the water refunding loan of 1922, amounting to $35,000, were issued by the borough pursuant to the Act of June 5, 1915, P. L. 846, for the construction and acquisition of water-works and appurtenances thereto, and the net revenue therefrom for a period of five years after the acquisition thereof will be sufficient to pay the interest on the bonds and the sinking fund charges during that period, and the bonds are secured by liens upon the water-works and impose no municipal liability.

10. The statement of the financial condition of the borough filed in the Court of Quarter Sessions preparatory to increasing its indebtedness is made a part of plaintiff's bill, and was read in evidence by him. It contains an averment that the actual indebtedness of the Borough of Tamaqua as of Feb. 13, 1925, the date of the filing of the financial statement, was $187,653.59, and that no part of the borough's indebtedness was created without a vote of the people. I, therefore, find that the entire bonded indebtedness of the borough outstanding prior to Feb. 13, 1925, was $187,653.59, all of which was issued with the assent of the electors given at an election held for the purpose of increasing the indebtedness of the borough.

11. The plaintiff avers in his bill that the floating indebtedness of the Borough of Tamaqua as of May 4, 1925, the date of the filing of his bill, was $60,000, consisting of a temporary loan amounting to $25,000 and of unpaid warrants drawn upon the borough treasurer amounting to $35,000, but has offered no evidence to establish that the floating indebtedness of the borough is a part of its permanent indebtedness. On the contrary, he has proved by the testimony of Samuel R. Beard, the borough treasurer, that at each year's end the outstanding temporary loans of the borough were paid, and that no new temporary loans were ever issued in such amounts that in the aggregate they could not be paid out of the taxes levied for the year in which they were

issued and made payable. There is no evidence to show that the warrants drawn upon the treasurer were not paid promptly when presented.

12. No ordinance or resolution was passed by the town council of the Borough of Tamaqua authorizing an election for the purpose of obtaining the assent of the electors to increase the borough indebtedness in the sum of $100,000, and no election was held to authorize the bond issue of $100,000 sought to be restrained by this bill.

13. A petition to amend the plaintiff's bill and the prayers for relief was filed Nov. 29, 1926. The proposed amendments to the bill are the addition as a party defendant of J. Nelson Gothie, who took his seat in the Town Council of the Borough of Tamaqua as an appointee to fill the vacancy caused by the death of Thomas Stahler after the bill had been filed, and the addition of E. H. Rollins & Co., the purchasers of the bonds, as a new or additional party defendant. The proposed amendments to the prayers of the bill are: (1) That the borough council "be restrained from the levy and collection of any tax intended for the payment of the interest and (or) principal of the said $100,000 bond issue;" (2) That the Borough of Tamaqua, its officers and agents, be restrained from appropriating or paying any money out of the borough funds for the payment of interest and (or) principal of the aforesaid bond issue of $100,000;" and (3) "such further and proper relief as the facts and circumstances warrant."

14. On March 30, 1927, the plaintiff filed a prayer for additional relief, reading as follows: "That the bond issue complained of should be declared illegal and void."

## Discussion.

The plaintiff's bill was filed and has been proceeded with on the theory that the issue of $100,000 of thirty-year 4½ per cent. bonds of the Borough of Tamaqua authorized by the Resolution of Feb. 9, 1925, was the creation of a debt of the municipality, both in excess of 2 per centum and of 7 per centum of the assessed value of the taxable property in the Borough of Tamaqua, in violation of article IX, section 8, of the Constitution of Pennsylvania: 1 Purdon's Digest, 197.

The admission by the plaintiff that on Feb. 9, 1925, there was no outstanding bonded indebtedness of the borough which was not issued without the assent of the electors reduces the question for decision to the ascertainment of whether the $100,000 bond issue, added to that previously issued and outstanding, increased the indebtedness of the borough to more than 7 per centum of the assessed value of its taxable property. The reason for this is the construction placed upon the constitutional provision here invoked in Keller v. Scranton, 202 Pa. 586. The City of Scranton on Nov. 17, 1900, had property of the assessed taxable value of $23,121,000, so that as of that date $462,420 of bonds was the total amount which could be issued without a vote of the electors. Its outstanding indebtedness was $582,000, of which $299,000 had been authorized by the electors and $283,000 had not. In this financial situation, the city council passed an ordinance providing for the construction of a viaduct, the erection of which might result in visiting the city with a liability for damages in the sum of $100,000, whereupon an injunction bill was filed restraining the city from carrying out the provisions of the ordinance on the ground that the $100,000 liability for damages constituted an increase of the city's indebtedness in excess of 2 per centum of the assessed value of its property, without authority from the electors. The lower court, adding together both classes of the outstanding indebtedness and the proposed increase, making a total of $682,000, held that the city's liability of $100,000 for damages,

if the viaduct were constructed, was an increase of more than 2 per centum in the municipal indebtedness, and entered a final restraining order because the assent of the electors had not been obtained to the increase. On appeal, this order was reversed on the ground that section 8 of article IX of the Constitution divides municipal indebtedness into three classes with reference to amount: (1) Debt more than 7 per centum of the assessed value of taxable property, which is entirely prohibited; (2) debt not over 2 per centum of assessed value which may be created by the municipal authorities without approval by vote of the electors; and (3) debt over 2 and not exceeding 7 per centum of the assessed value, which may be incurred by the municipal authorities only with the assent of the electors. The order in which this indebtedness is incurred, whether of the second or of the third class, is entirely immaterial. In other words, a municipality may first resort to an increase of its municipal indebtedness to the extent of 5 per centum with the assent of the electors, without diminishing its power subsequently to issue municipal indebtedness to the extent of 2 per centum, without a vote of the electors. This being so, the restraining order was set aside on appeal and the bill dismissed because the indebtedness of $283,000, being of the second class, added to the proposed increase of $100,000, or a total of $383,000, did not exceed the power of the municipal authorities of the City of Scranton to incur indebtedness of the second class, the maximum debt of that class being $462,420. In Troop v. Pittsburgh, 254 Pa. 172, 178, Swearingen, J., citing Keller v. Scranton, supra, designated municipal indebtedness under 2 per centum of the assessed taxable value as councilmanic debt, and that over 2 per centum to 7 per centum or under as electoral debt.

In the present case, there was no councilmanic debt outstanding on Feb. 9, 1925, unless the temporary loan of $25,000 and the outstanding warrants upon the borough treasury fall within that classification. The distinction between a short term or temporary loan of a municipality and a long-term loan, or an obligation representing a permanent debt, is that the former is merely an anticipation, in good faith, of the probable revenues of the year in which the loan is issued sufficient to pay it when due, and the latter, the creation of an obligation which cannot be met out of the anticipated revenues of the year in which it is issued: Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, 48, 49; Jackson, Assignee, v. Conneautville Borough School District, 280 Pa. 601, 607; Thomas Colliery Co. v. Shenandoah Borough, 7 D. & C. 314, 318. The allegation of the plaintiff that the $25,000 unsecured loan outstanding was a temporary loan, therefore, precludes its inclusion in the permanent indebtedness of the borough. Moreover, the burden of proof was upon the plaintiff to establish that the temporary loan of $25,000 and the unpaid borough warrants of $35,000 could not have been paid out of the current revenues for the year 1925 before these items can be classified as a permanent debt of the borough, and in this he has failed. The water loans of 1919 and 1922 have not been shown to be a debt of the borough within the meaning of the constitutional limitation upon its power to incur municipal indebtedness.

According to the allegations of the plaintiff's bill, the total bonded debt of the Borough of Tamaqua on Feb. 13, 1925, other than the water loans, was $152,000; adding to this the bond issue of $100,000, leaves a total bonded indebtedness of the Borough of Tamaqua outstanding of $252,000. The $100,-000 loan of 1925 is less than 2 per centum of the assessed taxable value of $5,422,682, which the plaintiff contends is the proper base upon which to compute the councilmanic indebtedness of the borough. If the councilmanic debt authorized by the Resolution of Feb. 9, 1925, be added to the electoral indebt-

Walters *v.* Tamaqua Borough et al.

edness issued earlier, the sum is approximately $100,000 less than 7 per centum of the lowest assessed value of the taxable property in the Borough of Tamaqua in the year 1925. I am of the opinion, therefore, that the bill must be dismissed, and this conclusion makes it unnecessary to dispose of the plaintiff's applications to amend, other than that to add the name of J. Nelson Gothie as a party defendant, which has beeen allowed.

### Conclusions of law.

1. A plaintiff in an injunction bill to restrain the issue of municipal bonds on the ground that the issue exceeds the constitutional limitation upon the municipality's borrowing power must prove every element of his case by the weight and fair preponderance of the evidence.

2. Section 8 of article IX of the Constitution divides municipal indebtedness into three classes with reference to amount: (1) Debt more than 7 per centum of the assessed value of taxable property, which is entirely prohibited; (2) debt not over 2 per centum of assessed value, which may be created by the municipal authorities without approval by vote of the electors; and (3) debt over 2 and not exceeding 7 per centum of the assessed value, which may be incurred by the municipal authorities with the assent of the electors. The order in which this indebtedness is incurred is entirely immaterial.

3. If no debt of a municipality issued by approval of a vote of the electors is outstanding when an increase in the indebtedness of less than 2 per centum of its assessed taxable value is authorized, the proposed increase is valid if the sum of the old and new debts does not exceed the constitutional limitation of 7 per centum.

4. A temporary loan, which is merely an anticipation, in good faith, of the probable revenues of the year in which the loan issued sufficient to pay the loan when due, is not a municipal indebtedness within the meaning of the constitutional limitation upon the borrowing power of a municipality.

5. Bonds issued by a borough, pursuant to the Act of June 5, 1915, P. L. 846, for the construction and acquisition of water-works cannot be considered as a debt of the municipality within the prohibition of the constitutional limitation upon municipal indebtedness, if the net revenues derived from the water-works for a period of five years, either before or after the acquisition or construction thereof by the municipality, have been sufficient to pay interest and sinking fund charges during said five-year period, or if the said obligations shall be secured by liens upon the water-works and impose no liability upon the municipality.

6. The bond issue of $100,000 authorized by the municipal authorities of the Borough of Tamaqua, Feb. 9, 1925, and sold to E. H. Rollins & Co., did not require the approval of the electors of the borough in order to make it valid.

7. The bond issue of $100,000 authorized by the municipality of the Borough of Tamaqua, Feb. 13, 1925, was not prohibited by section 8 of article IX of the Constitution.

### Decree nisi.

Upon consideration of the foregoing case by the chancellor, it is ordered, adjudged and decreed *nisi:*

1. Plaintiff's bill is dismissed.
2. Plaintiff is directed to pay the costs.

From M. M. Burke, Shenandoah, Pa.